726 P.2d 236

**KITCHELL CONTRACTORS, INC.,**
**Plaintiff-Appellee,**

v.

**CITY OF PHOENIX and City of Phoenix Tax Collector,**
**Defendants-Appellants.**

**No. 1 CA–CIV 7698.**

Court of Appeals of Arizona,
Division 1, Department C.

Aug. 7, 1986.

Reconsideration Denied Sept. 12, 1986.

Lewis & Roca by John P. Frank, Patrick Derdenger and Lisa C. Berry, Phoenix, for plaintiff-appellee.

Roderick G. McDougall, City Atty., Andy Baumert, Former City Atty., Philip M. Haggerty, Asst. City Atty., Phoenix, for defendants-appellants.

## OPINION

EUBANK, Presiding Judge.

The City of Phoenix appeals from a summary judgment in favor of Appellee Kitchell Contractors, Inc. in its action under the Phoenix City Code § 14–29(g) for the recovery of privilege license taxes paid under protest. The appeal presents two issues for our consideration which we restate as follows:

(1) whether bifurcating a hospital construction contract into an agreement for construction services and a separate agreement for providing materials, supplies and equipment (hereinafter "building materials") to be incorporated into the project enables the contractor to claim a privilege license tax exemption in the amount of the cost of the building materials as a "sale" of tangible personal property to a charitable hospital under Phoenix City Code § 14–40(1);

(2) whether the cost of the building materials should be included in the contractor's gross income for the purpose of calculating its thirty-five percent deduction from its gross income from the business of contracting pursuant to Phoenix City Code § 14–2(a)(2)(A).

The facts material to our resolution of these issues are not in dispute. On April 9, 1979 Kitchell entered into a contract with St. Luke's Hospital Medical Center (St. Luke) for certain construction, demolition, remodeling and improvement services at

the site of St. Luke's Hospital in Phoenix. The contract was entitled "Agreement Between Owner and Construction Manager." It actually included what purported to be two separate agreements. The construction agreement, set out in articles 1–15 and 17, enumerated and governed Kitchell's duties as "construction manager" for the project. Article 16 of the agreement, entitled "Agreement for Materials, Supplies and Equipment," separately obligated Kitchell to sell to St. Luke all of the building materials that were to be incorporated into the project, and in turn it required St. Luke to provide these same building materials to Kitchell for Kitchell's use in complying with the construction agreement.[1] Article 16 also required Kitchell to include identical article 16 provisions in every subcontract it awarded for the job. Under article 16 and the corresponding subcontract provisions, Kitchell was to inspect and approve the building materials its subcontractors provided, and title to them was to vest in St. Luke on presentment of invoices or other delivery documents. Paragraph 16.4 of article 16 provides:

> With respect to materials, supplies and equipment to be incorporated in the Work purchased by Construction Manager, either directly from suppliers or from Trade Contractors, Construction Manager shall present invoices or other delivery documents to Owner [St. Luke] covering such materials, supplies and equipment upon inspection and acceptance. Owner shall pay Construction Manager in accordance with the agreed upon invoices or other delivery documents no later than twenty (20) days from the date of presentment of the invoices or other delivery documents or delivery of such materials, supplies and equipment as are ordered directly by Construction Manager from suppliers. Title to such materials, supplies and equipment shall vest in Owner upon presentment of the invoices or other delivery documents. If materials, supplies and equipment purchased by the Owner from the Construction Manag-

er are determined by the architects to be unsuitable for the Work, Owner may rescind purchases from the Construction Manager with respect to such materials, supplies and equipment and require repayment with respect thereto.

Kitchell and its subcontractors were prohibited from incorporating any building materials into the construction project until title had vested in St. Luke. After title had vested in St. Luke, Kitchell and its subcontractors could then use the building materials only in constructing the project in accordance with the construction agreement.

Paragraph 16.5 of article 16 provided in part:

> In making sales to Owner [St. Luke] of all materials, supplies and equipment to be incorporated in the Work pursuant to the terms and conditions of this contract, Construction Manager shall not charge or collect Arizona or City of Phoenix transaction privilege taxes from the Owner and shall not report any transaction privilege tax liability in respect to such sales or pay over transaction privilege taxes to the Arizona Department of Revenue or the City of Phoenix, in view of Owner's [St. Luke] exemption from transaction privilege tax liability on purchases of tangible personal property as a tax-exempt charitable hospital pursuant to A.R.S. § 42–1321(A)(5) and Phoenix City Code, Ch. 14, art. I, § 14–41(a)(1).

Article 16 contemplated that the cost of the building materials would be accounted for separately from all other construction costs. Article 16 also provided that in the event any transaction privilege or similar taxes were assessed on the cost of building materials, either by way of sales taxes or inclusion within Kitchell's gross contracting income on the project, the tax would be the ultimate responsibility of St. Luke and not Kitchell.

Pursuant to article 16, Kitchell billed St. Luke separately each month for the building materials supplied for incorporation

---

1. Article 16 applied only to building materials to be incorporated into the project and not to those that Kitchell or its subcontractors consumed in the building process.

into the project. Kitchell's monthly billings included both those building materials it purchased directly from its own suppliers and those its subcontractors provided for the project.

Kitchell's privilege license tax returns to the City of Phoenix for the tax period of February 1980 calculated its tax liability based exclusively on its gross income from its services as construction manager on the St. Luke's project, less a thirty-five percent deduction pursuant to Phoenix City Code § 14-2(a)-(2)(A). Kitchell paid no privilege license taxes on receipts attributable to the supplying of building materials to St. Luke, claiming they were exempt under Phoenix City Code § 14-40(1) as proceeds from "sales" to a charitable hospital. At the same time, Kitchell aggregated its income from "sales" of building materials with its income for construction services in computing its thirty-five percent deduction.

After an audit, the City disallowed Kitchell's claimed exemption under § 14-40(1). Kitchell paid the disputed amounts under protest, and unsuccessfully challenged the City's position in a hearing before the Phoenix City Auditor. Kitchell thereafter brought this action in superior court pursuant to Phoenix City Code § 14-29(g). On cross motions for summary judgment, the Honorable James E. McDougall ruled in favor of Kitchell. Pursuant to Judge McDougall's order, Kitchell lodged a form of judgment which calculated its thirty-five percent deduction under Phoenix City Code § 14-2(a)(2)(A) as it had in its privilege license tax returns. The City objected, arguing that the thirty-five percent deduction should be computed on Kitchell's income from construction services only. The Honorable Bernard J. Dougherty, who assumed the case after Judge McDougall was re-assigned to the juvenile division, overruled the City's objection and entered judgment in accordance with Kitchell's position. This appeal by the City followed.

■ Phoenix City Code § 14-2 imposes a privilege license tax "on account of ... business activities within the city...." A taxpayer's "gross income," with certain ex-

ceptions specified elsewhere in the Phoenix City Code, is used as the base point for measuring the amount of the tax. § 14-2(a)(2)(A) provides in pertinent part:

(a) The tax rate shall be at an amount equal to one percent of the gross income from the business upon every person engaging or continuing in the following business activity: ...

(2) contracting, to be computed as follows:

(A) On or after the effective date of this amendment, (as described in paragraph (C) below); on the gross income, less a deduction in the amount of thirty-five percent of said gross income, in lieu of any labor, shop or subcontractor deductions.

§ 14-1 defines a "contractor" as:

A person who, for either a fixed sum, price, fee, percentage, bonus or other compensation other than actual wages, undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith. The term "contractor" includes subcontractors, specialty contractors, developers and speculative builders.

§ 14-2(a)(10) separately imposes a one percent tax on the gross income of persons engaging or continuing in the business of "selling any tangible personal property whatsoever at retail...." § 14-1 defines "sale at retail" as "[a] sale of tangible personal property for any purpose other than the resale thereof."

The Phoenix City Code also provides certain deductions or "exemptions" from the general taxing provisions of § 14-2. Before July 1, 1980, § 14-41(a)(1) provided that the Code's privilege license tax provisions would not apply:

To tangible personal property purchased by any hospital organized and operated exclusively for charitable purposes, or any hospital operated by the state or any political subdivision of the state, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

Effective July 1, 1980 old § 14–41(a)(1) was superseded by new § 14–40(1), which exempts:

(1) sales or rentals to any hospital organized and operated exclusively for charitable purposes, or any hospital operated by the State or any political subdivision of the State, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

Concerning privilege license tax exemptions in general, § 14–41.2 provides:

All exemptions set forth in this chapter, where applied to an activity, use or transaction, shall be limited to the specific activity, use or transaction described and not extended to include any other activity, use or transaction subject to the tax; e.g., "sales" shall not mean "rentals."

Phoenix Privilege License Tax Regulation § 14–25.1 [2] provides in pertinent part:

The Collector is directed to examine into all transactions, reported or unreported, if, in his opinion, there has been or may be an evasion or avoidance of the Privilege Tax. The Collector shall disregard any transaction which has been undertaken in an artificial manner in order to avoid, directly or indirectly, the application of the Privilege Tax, or which has been undertaken for the principal purposes of obtaining an exemption or exclusion from the Privilege Tax which would not have been obtained but for the artificial nature of the transaction. The standard by which all transactions shall be examined is whether this transaction, when considered in the context of the ordinary and customary manner such

transactions are conducted by others in the same or in a similar business, is the same as or substantially the same as the usual business form of the transaction. On the other hand, because a taxpayer conceives of a new or innovative method of doing business, it does not follow that the transaction is artificial, but such taxpayer must demonstrate that the transaction is thus structured for business reasons. Avoidance of the Privilege Tax is not regarded as a business reason. But a transaction may be structured to lessen or eliminate the Privilege Tax if the transaction is not artificial.

On appeal the City argues that article 16 of the agreement between Kitchell and St. Luke's is an artificial contrivance aimed at obtaining an exemption that would otherwise have been unavailable based on the true substance of the contracting business relationship. The City notes that despite the division of that business relationship into an agreement for contracting services and a separate agreement for the sale of building materials, St. Luke received at the end a finished construction project for a fixed price independent of building materials costs. The City asserts, and Kitchell does not deny, that there existed no business reason for the particular structuring of the agreement other than to reduce the total amount of transaction privilege and privilege license tax liability. The City therefore argues that the trial court erred in permitting Kitchell to recover the privilege license taxes it paid under protest attributable to its "sales" to an exempt hospital. We disagree.

## I. THE AGREEMENT AND THE PRIVILEGE LICENSE TAX EXEMPTION

Turning to the first issue, we must apply the well-settled rule in construing a tax statute or ordinance for coverage to liberally construe it in favor of the taxpayer and strictly against the taxing authority. *City*

---

**2.** Like the provisions of the Phoenix City Code, the Phoenix Privilege License Tax Regulations are enactments of the Phoenix City Council.

*of Phoenix v. Santa Anita Development Corp.,* 141 Ariz. 179, 685 P.2d 1331 (App. 1984). On the other hand, a tax statute or ordinance granting a tax exemption must be strictly construed against an exemption from taxation. *Meredith Corporation v. State Tax Commission,* 23 Ariz.App. 152, 531 P.2d 197 (1975). In this review process, we must follow the admonition of our Supreme Court in *Arizona State Tax Commission v. Staggs Realty Corp.,* 85 Ariz. 294, 297, 337 P.2d 281, 283 (1959): "[I]t is especially important in tax cases to begin with the words of the operative statute. We have repeatedly said that such words will be read to gain their fair meaning, but not to gather new objects of taxation by strained construction or implication." Thus, the intention of the Phoenix City Council must be ascertained from the Ordinance.

There is no argument between the parties that, except for the agreements between Kitchell and St. Luke, Kitchell would have been liable, as a contractor, for the full amount of the tax imposed by Phoenix City Code § 14–2(a)(2)(A). There is also no argument that if St. Luke had acted on its own and purchased tangible personal property for the construction that it would have been entitled to claim the exemption pursuant to § 14–41(a)(1), and after July 1, 1980 § 14–40(1). Thus, the question is whether the agreement between Kitchell and St. Luke making St. Luke the vendee of all materials and supplies incorporated into the hospital and Kitchell the vendor should be given legal efficacy. Both parties to this appeal rely on the same case in support of their arguments pro and con. Indeed, it does give some support to both sides. The case is *Ebasco Services Inc. v. Arizona State Tax Commission,* 105 Ariz. 94, 459 P.2d 719 (1969). A summary of *Ebasco* is provided by the Supreme Court in its later opinion *State Tax Commission v. Holmes & Narver, Inc.,* 113 Ariz. 165, 167–68, 548 P.2d 1162, 1164–65 (1976) as follows:

> Arizona Public Service Company engaged Ebasco to construct two power generating plants. Ebasco had several divisions under its corporate umbrella performing a complete range of services within its industry including a division which specialized in engineering design of such facilities, a construction division and a division to purchase services. With respect to one of the plants the duties of purchasing, engineering and contracting were set forth in three separate contract documents. In that case the Commission argued that:
>
>> "the engineering and purchasing were integral parts of Ebasco's construction business, and that because of the broad statutory base upon which the tax is imposed, a different result should not be achieved by the simple expedient of dividing a construction contract into its component parts. * * A.R.S. § 42–1309 imposes the tax on the amount or volume of business transacted rather than on the form of the contract employed by the parties."
>
> It further contended the statute:
>
>> "measures tax liability by the scope of the business; that it is by the substance of what is done rather than by some tenuous standard such as the form of the contract." *Ebasco Services, Inc. v. Arizona State Tax Commission,* 105 Ariz. at 98, 459 P.2d at 723.
>
> We held that the placing of engineering and contracting functions in separate contract documents was not for the purpose of tax avoidance, that design and engineering services clearly did not fall within the purview of the statutory definition of a "contractor" and that design and engineering services were non-taxable.

(In *Holmes* there was just one contract which included design and engineering services as well as taxable contractor services. The *Holmes* court held that one contract document was not an impediment to the exemption where it can readily be ascertained, without substantial difficulty, which portion of the business is for nontaxable services (design and engineering). Thus, *sub judice,* the fact that two agreements

are contained in one agreement is no bar to exemption in itself).

We do agree with the parties that *Ebasco* is helpful in resolving the issue before us. The trial judge was of the same opinion. In his ruling on January 20, 1983, the court, in part, said:

In *Ebasco Services Inc. v. Arizona State Tax Commission*, 105 Ariz. 94, 459 P.2d 719 (1969), the Court had before it an uncontradicted record establishing that it was common practice for a public utility to use a purchasing agent for the acquisition of specialized equipment required in its construction projects. The Court there considered and found to exist significant business reasons, unrelated to tax avoidance, which they found justified the purchasing agency relationship. In this matter, the Court has not been educated in regard to any "business reasons" for the purchasing agency relationship sought to be established.

The Court does not believe however that the failure to specifically define the "business reasons" for the structure of the agreement is fatal to Kitchell's position. The Court finds that City Regulation 14–25.1 is vague and ambiguous and should not be used to defeat the use of the Hospital exemption unless it clearly appears that the transaction is artificial.

Kitchell has cited the Court to many examples of the use of the purchasing agency relationship in similar construction contracts which have been approved by the courts and taxing authorities. In *Ebasco, supra,* The Supreme Court stated, "There is no inherent or common law contractional obligation on the part of the contractor requiring him to supply the materials." In light of the evidence presented by Kitchell the Court cannot merely presume that the purchasing agency relationship is unusual or artificial. The city argues that the furnishing of materials, supplies and equipment is a part of the usual and ordinary business of contracting. However, other than establishing that payments were made during the course of the contract in a manner similar to other construction contracts, the city has not presented the Court with any evidence as to what the ordinary and usual business of contracting consists of as to Kitchell or others in the same or similar business.

The real party in interest in this litigation is obviously the Hospital. It is the Hospital's exemption with which we deal pursuant to their agreement, in the event Kitchell is unsuccessful in this litigation, the Hospital will not only be required to pay the tax assessed, but will also be required to reimburse Kitchell for its costs and attorney's fees in this litigation.

The purpose of the structure of the agreement between Kitchell and the Hospital is clear on its face. The Hospital desires to take full advantage of a tax exemption to which it feels it is entitled. In order to do this it must purchase from Kitchell, and Kitchell must sell to the Hospital, each and every material, supply and piece of equipment which is incorporated into its building. No one can question that if a representative of the Hospital purchased individually each and every item incorporated into its facility it would be entitled to a tax exemption as to each of those sales.

The purpose for the exemption, and hopefully the reason the Hospital seeks to apply it in this instance, is to reduce the cost of obtaining materials, supplies and equipment for the construction of its facilities so that they may be utilized in providing medical care and related services to the public at lower overall cost to the patients it serves.

■ Thus, the trial judge agreed with the argument advanced by St. Luke. We also agree but add an additional basis to our agreement. Here it is admitted that St. Luke is a private nonprofit charitable institution within the meaning of the Phoenix City Code § 14–40(1), and that St. Luke is entitled to receive a tax exemption on its purchase pursuant to Code § 14–41(a)(1), and after July 1, 1980 § 14–40(1). Under these circumstances, we believe that the

"business reasons" alluded to in *Ebasco* are met here. Certainly, the business of running a charitable nonprofit hospital requires cost control and wise use of financial resources. Article 16 of the agreement accomplishes this "business reason." The reduction of cost of the project is certainly as valid a "business reason" as Ebasco Services Inc. had in *Ebasco*. Further, if we apply a strict construction to the exemptions, we do not reach a contrary conclusion. The City Council clearly intended to grant a tax exemption when they enacted Code § 14–41(a)(1) and after July 1, 1980 § 14–40(1), and St. Luke and Kitchell purposely brought themselves within the exemption by article 16 of the agreement and their method of implementing its provisions. Thus, we disagree with the City that the agreement is an artificial contrivance.

■ Both parties discuss the application of Phoenix Privilege License Tax Regulation 14–25.1, set out in part above. The regulation creates a presumption that, except as provided in the Phoenix City Code § 14–17 (Exemption), all gross income shall be presumed to be taxable. The regulation directs the collector to disregard any transaction which has been undertaken in an "artificial manner in order to avoid, directly or indirectly, the application of the Privilege Tax, or which has been undertaken for the principal purpose of obtaining an exemption or exclusion from the Privilege Tax which would not have been obtained but for the artificial nature of the transaction."

The trial court found that the regulation was "vague and ambiguous and should not be used to defeat the use of the hospital exemption unless it clearly appears that the transaction is artificial." The court said:

If we apply the standards of City's Regulation 14–25.1 to Kitchell it is easy to argue that Kitchell is attempting to obtain an exemption to which it might not otherwise be entitled. However, the exemption is the Hospital's. It is the structure of their agreement with Kitchell that we must consider. The agreement has been structured in a straight forward unartificial manner, the same as other similar hospital construction contracts recognized as legitimate by the State taxing authority, in order to retain a tax exemption they might otherwise lose. The agreement here does not merely create a purchasing agency fiction. In fact, Kitchell and the subcontractors were the purchasing agents of the Hospital. All items were to be purchased at cost for resale to the Hospital without the imposition of a transaction privilege or other similar tax. Title to the items would pass to the Hospital upon presentation of a delivery invoice or upon payment, and was not contingent upon incorporation of the items into the project. In fact Kitchell and the subcontractors were forbidden from incorporating materials, supplies and equipment furnished by the Hospital prior to the time title passed to the Hospital. The sales by Kitchell and the subcontractors to the Hospital were carefully segregated and documented. These transactions were clearly "sales" as defined by the city's own tax code.

In our opinion it was not necessary for the court to find that Regulation § 14–25.1 was "vague and ambiguous." The regulation was obviously intended by the Council as instructions and directions to the City Tax Collector to guide him and his deputies in performing their duties in collecting the tax. The regulation requires a "hard" line audit, with all presumptions against granting a tax exemption. Indeed, the facts in this case illustrate that the collector and his staff fully complied with the regulation. On the other hand, it is equally clear that the City Council did not intend to amend the City Code by merely enacting a regulation that was directed to its tax collector. Obviously, if they intended for Regulation § 14–25.1 to amend the Privilege License Tax exemption they would have amended it. We hold that the regulation § 14–25.1 does not amend the Phoenix Privilege License Tax exemption, and is not "vague and ambiguous" when limited to its tax

collecting-auditing purpose. Thus, on the first issue we agree with the trial court's analysis except for its analysis of the regulation. The regulation 14–25.1 is not applicable in determining whether or not the tax or exemption is proper.

We affirm the judgment on this issue.

## II. COMPUTING THE 35% DEDUCTION

■ The second issue involves Kitchell's computation of the 35% deduction. The trial court granted Kitchell summary judgment on this issue and the city appeals, contending:

A taxpayer cannot claim that income is *sales income* for one purpose, i.e., a hospital exemption, and then claim that it is *contracting income* for the purposes of the 35% deduction. This is a double deduction and should not be allowed, and the mathematical figures presented by Kitchell in this proposed form of judgment accomplish a double deduction. (Emphasis in original).

Kitchell has claimed that in entering into this agreement, it was making sales of tangible personal property to an exempt organization. It therefore claims the position of being a retail seller of tangible personal property. In such status it cannot claim a deduction which belongs only to someone who is being taxed on gross receipts from the business activity of contracting.

Phoenix City Code § 14–2 states in part:

There is hereby levied upon persons on account of their business activities within the City and shall be collected by the Collector for the purpose of raising revenue to be used in defraying the necessary expenses of the City, privilege taxes to the extent hereinafter provided to be *measured by the gross income* of persons, whether derived from residents of the City or not, or whether derived from within the City or from without, and *all of said gross income shall be used to measure the tax with exceptions as set forth* in Subsections (b) and (c) of this Section, and *in Sections 14–40,* 14–41,

and 14–41.1 of the Phoenix City Code in accordance with the following schedule:

(a) The tax rate shall be at an amount equal to one percent of the *gross income* from the business upon every person engaging or continuing in the following business activity:

(1) . . .

(2) Contracting, to be computed as follows:

(A) On or after the effective date of this amendment, ... *on the gross income, less a deduction* in the amount of thirty-five percent of said *gross income,* in lieu of any labor, shop or subcontractor deductions. (Emphasis added).

The Code § 14.1 defines "Gross Income" as "The gross consideration realized by a taxpayer in the conduct of any activity subject to tax under § 14–2 and not expressly exempted or excluded." Applying this definition to gross income as used in § 14–2, it is clear that all references are to the same gross income. Therefore, the gross income used to determine subsection (a) is the same as that referred to in subsection (a)(2)(A). The definition in § 14–1 expressly removes from gross income amounts expressly exempted from the tax. Section 14–2 also provides that all gross income shall be used to measure the tax with exceptions as set forth in ... Sections 14–40, 14–41 and 14–41.1. In issue I above, we held that Kitchell was exempted from the tax pursuant to Code § 14–41(a)(1) and after July 1, 1980 § 14–40. Thus, as the City contends, Kitchell is not entitled to a different "gross income" in determining the thirty-five percent deduction than used in determining its gross consideration.

This conclusion is supported by the case relied on by the parties: *Ebasco Services Inc. v. Arizona State Tax Commission, supra.* In *Ebasco* the Supreme Court held, in part, that owner supplied equipment, which is to be incorporated into the construction project, was not a gross receipt (gross income) for state transaction privilege and education excise tax purposes. The definitions of gross income in the state

law (A.R.S. § 42–1301(7) and (9) are similar to that in the Phoenix City Code § 14–1 and the rationale is the same. Applied to the instant issue we could say: If you remove by exemption any part of "gross income" from § 14–2(a) then the same part must be removed from "gross income" for the purpose of computing § 14–2(a)(2)(A).

Kitchell asserts, however, that the thirty-five percent standard deduction was intended to approximate the contractor's deduction for actual labor costs under an earlier version of the City Code. It argues that its labor costs are the same whether the contractor or the owner supplies the materials incorporated into the project. Since that is so, Kitchell reasons, the building materials costs must be included in its gross income for purposes of calculating the thirty-five percent deduction, for that is the only way actual labor costs may be approximated accurately. We disagree.

Code § 14–2(a)(2)(A) provides that the thirty-five percent deduction is "in lieu of" labor, shop and subcontractor deductions. It does not say that the new standard deduction was intended to be the equivalent of actual labor costs. The City Council's intention that the thirty-five percent deduction approximate actual labor costs, is simply not expressed in the terms that Kitchell argues. In our opinion just the opposite intent is expressed. In order to avoid the complication for which Kitchell contends, the Council intended to enact and did enact "in lieu" deduction of 35% based on "gross income" for labor expense. This same conclusion was reached by our court in *Knoell Brothers Construction, Inc. v. State Department of Revenue*, 132 Ariz. 169, 644 P.2d 905 (App.1982) under state law. In *Knoell Brothers* the question was whether the sale price of the land on which a construction project was built was to be included in gross income for purpose of computing the thirty-five percent "in lieu of labor" deduction contained in A.R.S. § 42–1310(2)(i), which is substantially similar to City Code § 14–2(a)(2)(A). The court first noted that the transaction privilege tax as applied to contractors is paid for the privilege of engaging in the contracting business and is measured by the gross income or gross receipts of a contractor derived from his contracting business. The court further noted that its earlier decision in *Dennis Development Co., Inc. v. Department of Revenue*, 122 Ariz. 465, 595 P.2d 1010 (App.1979) has held that proceeds from land sales were not included in a contractor's gross income for transaction privilege tax purposes. The court stated:

It would therefore appear that if a contractor generates income from contracting activities, as those activities are defined in A.R.S. § 42–1301(4), then such income is properly included in the contractor's tax base. Conversely, if monies come to the contractor from sources other than his taxable contracting business activities, they do not constitute gross income for the purpose of calculating the "in lieu of labor" deduction under A.R.S. § 42–1310(2)(i).

It further appears only reasonable that the term "gross income" as used in A.R.S. § 42–1310(2)(i) be interpreted in a uniform manner both for imposing the tax as well as for calculating the thirty-five percent labor.

132 Ariz. 169, 171, 644 P.2d 905, 907.

Thus, we agree with the City of Phoenix and reverse the summary judgment on this issue.

## III. ATTORNEY'S FEES AND COSTS

Kitchell has requested attorney's fees pursuant to A.R.S. § 12–348, Rule 21 and Rule 25, Arizona Rules of Civil Appellate Procedure. Since Kitchell was not the prevailing party on appeal the request for attorney's fees is denied. Since the City was successful on appeal it is entitled to receive its costs. A.R.S. § 12–342.

The summary judgment is reversed and the matter is remanded for the entry of a modified judgment in favor of Kitchell in accordance with this opinion.

SHELLEY and HAIRE, JJ., concur.