909 P.2d 421

**BRINK ELECTRIC CONSTRUCTION COMPANY, a South Dakota corporation; Ball, Ball & Brosamer, Inc., Plaintiffs–Appellees,**

v.

**ARIZONA DEPARTMENT OF REVENUE, an agency of the State of Arizona, Defendant–Appellant.**

Nos. 1 CA–TX 93–0010, 1 CA–TX 93–0011.

Court of Appeals of Arizona, Division 1, Department T.

June 29, 1995.

Review Denied Jan. 17, 1996.

---

Grant Woods, Arizona Atty. Gen. by Michael P. Worley, Asst. Atty. Gen., Phoenix, for defendant-appellant.

Lewis and Roca by John P. Frank, Patrick Derdenger and Michael G. Galloway, Phoenix, for plaintiffs-appellees.

## OPINION

LANKFORD, Judge.

In this consolidated appeal, the Arizona Department of Revenue (ADOR) appeals from tax court judgments in favor of taxpayers Brink Electric Construction Company (Brink) and Ball, Ball & Brosamer, Inc. (Ball). The tax court held that ADOR violated Brink's and Ball's right to equal protection of the law by arbitrarily requiring a purchasing agent relationship between a contractor and an owner to obtain a transaction privilege tax exemption. The tax court also

<hr />

1. The appeal is assigned to Department T of this court pursuant to A.R.S. sections 12–120.04(G) and 12–170(C).

2. Formerly A.R.S. section 42–1309. *See* 1985 Ariz.Sess.Laws Ch. 298, § 15.

3. This provision is not substantively different for purposes of this litigation from former A.R.S.

held that in installing electrical transmission equipment, Brink made tax-exempt retail sales to the project owners. We have jurisdiction pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 12–2101(B).[1]

Four issues are raised on appeal:

(1) Did the exemptions claimed by Brink and Ball apply to the tax on the business of contracting as well as the tax on retail sales?

(2) Did the tax court err in determining that Brink's installation of electrical transmission equipment constituted selling personal property at retail rather than contracting?

(3) Did the tax court err in holding that the existence of a purchasing agency agreement is an arbitrary basis for exemption from taxation, so that denial of the exemptions to Brink and Ball violated their right to equal protection of the law?

(4) Did ADOR violate Brink and Ball's right to equal protection of the law by not allowing them to claim retail exemptions after ADOR had previously allowed some contractors to claim exemptions whether or not there was an agency agreement?

The taxes at issue are transaction privilege taxes. The State levies taxes "measured by the amount or volume of business transacted by persons on account of their business activities, and in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income, as the case may be, as prescribed by this article." A.R.S. § 42–1306(A).[2] The State applies a transaction privilege tax to retail sales. "The retail classification is comprised of the business of selling tangible personal property at retail." A.R.S. § 42–1310.01(A).[3]

The State also applies a transaction privilege tax to those engaged in the business of contracting. A.R.S. § 42–1310.16(A).[4] The

sections 42–1301(B)(6), 42–1312, 42–1312.01(A)(4), 42–1312.01(A)(6), 42–1315, 42–1316(A)(4), and 42–1316(A)(6).

4. The predecessors of current A.R.S. section 42–1310.16, in effect during the assessment periods at issue here, were not substantively different for purposes of this litigation. *See* former A.R.S. §§ 42–1310(2)(i) and 42–1308. For the sake of convenience and continuity, we refer to the cur-

tax base for these companies is "sixty-five percent of the gross proceeds of sales or gross income derived from the business." A.R.S. § 42–1310.16(B).

By using *gross* income as the base for the transactional tax on construction, the State does not reduce the tax base by the cost of the construction. Instead, it taxes not only the profit earned from a construction project but the materials used in the project as well. The thirty-five percent reduction from the gross amount is intended to deduct labor costs, so that the remaining sixty-five percent represents materials. *Gosnell Dev. v. Arizona Dep't of Revenue,* 154 Ariz. 539, 539, 744 P.2d 451, 451 (1987). To further reduce their tax base, construction contractors must use specific exemptions enumerated in the tax code.

Similarly, retailers may also reduce their tax base by statutory exemptions. In particular, subsections 42–1310.01(B)(4) and (6) exempt retail sales of "machinery, equipment or transmission lines used directly in producing or transmitting electrical power" and "pipes or valves four inches in diameter or larger used to transport oil, natural gas, artificial gas, water or coal slurry."

Between 1983 and mid–1986, auditors and supervisors within ADOR inconsistently interpreted a 1982 decision by the Director of the Department. Some auditors allowed contractors, regardless of whether or not they were purchasing agents for project owners, to employ the retail exemption for machinery and equipment, while others did not. These exemptions were allowed even though they apply to retail sales and not to contracting.

In 1987 and the years following, ADOR no longer allowed these exemptions to contractors. The Department also recovered refunds which had been previously issued based on the allowance of these exemptions. In essence, ADOR subjected contractors to the contracting tax without engrafting the exemptions from the retail tax statute.

Meanwhile, some contractors employed "purchasing agent agreements" with project owners to obtain supplies and equipment that were statutorily tax exempt. *See* A.R.S. § 42–1010.01(B). Under the agreement, the contractors purchased the tax exempt equipment and supplies for a project as the owner's agents, rather than on their own behalf. The purchasing agent collapsed two transactions—a retail sale *to* the contractor and the furnishing of the same materials *by* the contractor to the owner—into one transaction, a retail sale eligible for retail exemptions. Consequently, the contractors did not include the cost of the equipment and supplies in the tax base because they never acquired title or sold them. The sale of these materials by retailers to owners was also tax exempt because the supplies and equipment sold by the retailers to the owner fell within the retail sale exemption. *See, e.g., Ebasco Services Inc. v. Arizona State Tax Comm.,* 105 Ariz. 94, 459 P.2d 719 (1969); *Kitchell Contractors, Inc. v. City of Phoenix,* 151 Ariz. 139, 726 P.2d 236 (App.1986).

With this background in mind, we turn to the facts at hand. Brink is a construction contractor. From January 1986 through April 1988, Brink built two electrical substations in Arizona. Brink purchased electrical transmission materials and equipment directly from the retailer without a purchasing agent agreement. Brink neither reported nor paid transaction privilege taxes on its contracting revenue at any time. During 1986, Brink reported and paid transaction privilege taxes to ADOR on materials and equipment it incorporated into electrical substations it was constructing. It stopped doing so thereafter. ADOR audited Brink for January 1986 through April 1988 and determined that Brink's receipts under two electrical substation contracts constituted contracting income subject to privilege taxation. Brink conceded that its receipts for site work, concrete work, building construction, earth work, and road construction were receipts from the business of contracting. Brink protested the balance of the assessment.

Ball is also a construction contractor. During the period from April 1983 through March of 1987, Ball performed fifteen con-

rent statute as if it were effective throughout the    audit periods in question.

struction contracts in Arizona. All contracts required Ball to furnish and install pipes and valves of four or more inches in diameter for transporting water. Ball purchased the pipes from the retailer without a purchasing agent agreement. The cost of all these larger pipes and valves, and the labor associated with their installation, was accurately and separately noted in Ball's books and records.

Ball reported and paid Arizona transaction privilege taxes under the contracting classification on its receipts from all its contracts, including receipts attributable to furnishing larger pipes and valves. In June of 1987, however, Ball requested a refund in the amount of $892,635 representing taxes paid on the larger pipes and valves. ADOR denied the refund claim.

Brink's action challenging the assessment and Ball's action seeking a refund were submitted to the tax court together on stipulated facts. On cross-motions for summary judgment, the court held that contractors are not entitled to retail exemptions from the transaction privilege tax. The tax court granted partial summary judgment to ADOR on another theory, holding that taxpayers were not exempt from taxation as purchasing agents. The remaining issues were tried to the court.

After trial the court found in favor of Brink and Ball on other grounds. The court found that Brink was an installer of electrical transmission equipment rather than a contractor because the equipment was designed to be removable; thus, the sales of this equipment constituted retail sales rather than the business of contracting and were entitled to the retail exemption for such equipment.

The court also determined that the purpose for the exemption from taxation of materials sold to contractors is to prevent double taxation of these materials. Without the exemptions, these items would be taxed once as a retail sale and again as part of the contractor's receipts. Moreover, the court decided, both the retail and contracting taxes may be avoided entirely by including a purchasing agency agreement in the construction contract. The court determined that the inclusion of an agency agreement does not

alter the construction process, does not provide anything different to the project owner, nor does it require a change in the money flow. As a result, an exemption from taxation based on an agency agreement was arbitrary. The enforcement of the tax against Brink and Ball—whose contracts lacked agency agreements—violated their rights under the equal protection clauses of both the United States and Arizona Constitutions.

▪ This case presents questions involving the interpretation and application of the tax statutes. When the material facts are undisputed, the role of this Court is to determine whether the trial court correctly applied the substantive law to those facts. *Miller v. Westcor Limited Partnership*, 171 Ariz. 387, 831 P.2d 386 (App.1991). We review questions of law de novo. *Norriega v. Machado*, 179 Ariz. 348, 351, 878 P.2d 1386, 1389 (App.1994). We are bound neither by the trial court's conclusions of law nor by findings that combine both fact and law. *Lee Development Co. v. Papp*, 166 Ariz. 471, 803 P.2d 464, (App.1990).

▪ In construing a tax statute, we will construe it liberally in favor of the taxpayer. *RDB Thomas Road Partnership v. City of Phoenix*, 180 Ariz. 194, 883 P.2d 431 (App. 1994). However, if the statute grants a tax exemption, we must construe it strictly against the exemption. *Kitchell Contractors, Inc. v. City of Phoenix*, 151 Ariz. 139, 144, 726 P.2d 236, 241 (App.1986).

I.

In support of the judgment, Brink and Ball argue that the retail tax exemptions apply to the tax on the business of contracting as well as the tax on retail sales. Although taxpayers' briefs are vague on this point, they seem to argue that although they are contractors, they are similar to retailers and therefore should receive retail tax exemptions. We find no merit to this argument.

▪ A similar issue was previously raised under analogous provisions of the Excise Tax Act of 1935 in *Duhame v. State Tax Commission*, 65 Ariz. 268, 179 P.2d 252 (1947). The legislature had levied an "annu-

al privilege tax measured by the amount or volume of business done ..." *Id.* at 272, 179 P.2d at 254; *see* former A.R.S. § 73–1303. However, this tax did not apply to "... any sales made to the United States government." *See* former A.R.S. § 73–1308. The taxpayer, a contractor, challenged the taxes levied on the gross amounts he received from government contracts. The taxpayer argued that the taxes were levied upon sales to the United States government and were therefore exempt. The Arizona Supreme Court disagreed. It held that when a contractor completes a project that is erected on the owner's land, the elements of the tangible personal property employed in the project are destroyed by their incorporation in the completed structure. *Id.* at 279, 179 P.2d at 259. Thus, contractors may not characterize the completed project as a sale at retail of tangible personal property, thereby allowing them to take advantage of the retail sale exemption. *Id.* at 279–280, 179 P.2d at 259. Although *Duhame* is not directly on point, it clearly illustrates that the retail exemptions are available only to retailers as defined by the statute.

The taxpayers urge, however, that the legislature overruled *Duhame* when it adopted A.R.S. section 42–1310.01(A)(27), a provision exempting sales of tangible personal property to contractors from the retail tax. Accordingly, contractors may now take any retail exemptions enumerated within 42–1310.01. Former Arizona Code Annotated of 1939 (A.C.A.) section 73–1329, now codified as A.R.S. section 42–1310.01(A)(27), states:

A. ... The tax imposed on the retail classification pursuant to this section does not apply to the gross proceeds of sales or gross income from:

. . . .

27. Tangible personal property sold to a person engaged in business classified under the contracting classification if the person is subject to tax under this article by reason of being engaged in such business ... if the property so sold is to be incorporated or fabricated by the person into any real property, structure, project, development or improvement as part of the business. No deduction is available for the sale of tangible personal property which is not to be so incorporated or fabricated.

The core of the taxpayers' analysis is that, by exempting sales of tangible personal property to contractors, the legislature intended to treat such sales as sales for resale. They argue that if a sale of tangible personal property to a contractor is an exempt sale for resale, then the contractor's subsequent sale of that property to the ultimate consumer must be a retail sale eligible for the retail sale exemptions. The taxpayers' argument assumes that the only reason the legislature exempted sales of tangible personal property to contractors was to deem such sales to be for resale.

▉ Reading the plain language of 42–1310.01(A)(27), the exemptions apply only to retail sales made to contractors. Nowhere in the statute has the legislature characterized the exemption as an exemption for resale. If the legislature had wished to exempt contractors completely, the simplest and most straightforward way to have done so would have been to expressly exclude such sales from their tax base as it did in section 42–1310.16(B).[5]

▉ Furthermore, the taxpayers misunderstand the purpose of 42–1310.01(A)(27). The purpose of the statute is not to make retail exemptions available to contractors, who are subject to the contracting tax and not the retail tax. As stated by the trial court, this provision grants retailers an exemption for the sale of tangible personal property to contractors to avoid double taxation. Otherwise, the property sold to contractors for incorporation into construction

---

5. In a footnote in their brief, Taxpayers refer to A.A.C. section R15–5–2316 which stated that "purchases of steel beams, lumber and other construction materials to become incorporated into a structure are considered to be *for resale* and not subject to the use tax." (Emphasis added). Of course, a regulation may not contradict a statute. Nowhere has the legislature characterized these as sales for resale. On the contrary, the resale exemptions are located within A.R.S. section 42–1310.01(L). Moreover, this regulation was repealed effective September 29, 1993.

projects would have been taxed once at the retail level as a retail sale and a second time as part of the transaction privilege tax on contracting.

Moreover, even if the sale from the supplier to the contractor were a sale for resale, that characterization would not necessarily make the contractor's subsequent sale a retail sale. The contractor's transaction is as section 42–1310.16 provides, taxed as the business of contracting.

■ In sum, the sale to the contractor is a retail sale, not subject to taxation. However, the transaction between the contractor and the owner is subject to the contracting tax. The contractor may claim only those exemptions listed under the contractor classification, not the retail classification.

## II.

As a cross-issue in support of the judgment, Brink contends that its furnishing and installing electrical transmission equipment at the substations did not constitute the business of contracting. It argues that it was not engaged in contracting because it did not permanently attach or affix the equipment to real property. Accordingly, Brink argues that it is entitled to the retail sale exemptions.

Brink relies on evidence that the various items it installed were merely set down or bolted down and could be moved to other locations without damage. During construction, equipment was trucked to each substation. Brink attached steel supports to individual concrete pads to support the insulators and the conduit through which the electricity flows. Each support was attached to its pad by four nuts and bolts that could be removed with a crescent wrench. On loosening the bolts, the supports could be removed without causing damage to the support or the concrete foundation.

Large oil-filled transformers, which weighed more than 180,000 pounds, were set on concrete pads. Smaller transformers were fastened to concrete pads with half-inch expansion anchors to hold them in place. Disconnect switches were each attached to a "table" by four bolts. Each table had four legs attached to a concrete pad with nuts and bolts. Similarly, instrument transformers and power circuit breakers were bolted onto supporting tables that were in turn bolted to a concrete pad. These items were mounted in this way to keep them from moving as they operated, not to permanently attach them. Like the steel supports for the insulators and electrical conduit, these equipment items could be unfastened without causing damage to the equipment or the concrete pad.

If power needs were to change, the owner could move the equipment elsewhere in the same substation or to a different substation. Brink has periodically assisted in disassembling, removing and reinstalling transformers, disconnect switches, breakers, wiring, and steel bus supports.

Contrary to Brink's argument and the tax court's holding, however, the relative degree of permanency with which Brink attached or affixed the equipment and materials is not the issue. For example, a central air-conditioning and heating unit can be removed from the roof of a residence and used elsewhere, but that does not establish that the original work of furnishing and installing it was other than the business of contracting. The same is true of the electrical transmission equipment Brink furnished and installed at the substation job sites. The root question in either case is whether the installer acted to "construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation, manufactured building or other structure, project, development, or improvement. . . ." A.R.S. § 42–1310.16(F)(2).[6]

---

6. We recognize that A.A.C. R15–5–608 provides that "[i]nstallation of equipment which becomes permanently attached in a plant or other structure is taxable as a contracting activity." Unlike Brink, however, we do not derive from it the proposition that there can be no "contracting" with respect to equipment where perma-

nent attachment does not occur. The regulation certainly includes permanent attachment of equipment to a structure within the scope of contracting, but does not purport to exclude other real property improvements.

[Footnote continued on page 428.]

Recently, the South Dakota Supreme Court rejected a factually and legally similar argument that this same taxpayer made in attempting to exclude from its taxable gross receipts from "realty improvement contracts" the amounts attributable to electrical transmission equipment it had installed. *Brink Elec. Const. v. State of South Dakota Dep't of Revenue,* 472 N.W.2d 493 (S.D.1991). There Brink entered into contracts to replace equipment, construct an addition to one electrical substation, repair and replace primary electric cable, and build another electrical substation. The South Dakota court held that the amounts attributable to the items Brink installed were taxable as receipts from realty improvement contracts. The court cited *Matter of Diagnostic Medical Systems,* 415 N.W.2d 816 (S.D.1987) for the following criteria for determining whether an article constitutes an improvement to real property: (1) its actual or constructive annexation to the realty; (2) its adaptability to the use and purpose for which the realty is used; and (3) the intention of the party making the annexation. The controlling criterion was whether the party intends to make the article a permanent accession to the realty. The court stated:

> Besides supplying and installing equipment, the contracts included grading, embankment construction, trenching, creation of reinforced concrete foundations, demolition and foundation removal, repairs, removal of old equipment and materials, erection of steel structures, construction of transmission lines and reroofing a service building and building modifications. Under all three contracts the overall work improved the realty for electrical transmission purposes.
>
> . . . .
>
> *The permanency required is not equated with perpetuity. It is sufficient if the item is intended to remain where affixed until worn out, until the purpose to which the*

*realty is devoted is accomplished or until the item is superseded by another item more suitable for the purpose.*

*Brink,* 472 N.W.2d at 499–500 (emphasis added), quoting *Matter of Tax Appeal of Logan and Associates,* 331 N.W.2d 281, 283 (S.D.1983).

Brink argues that while that may be the law in South Dakota, it is not the law here. The issue in *Brink v. South Dakota* was whether, for tax purposes, the transaction was a "realty improvement contract." We admittedly do not have that verbal formula in our law. According to Brink, the question here is a matter of permanent attachment versus transient attachment. We disagree.

The absence of the term "realty improvement contract" from the applicable Arizona statute does not render *Brink v. South Dakota* inapposite. The definition of "contracting" in A.R.S. section 42–1310.16 fully subsumes the concept of "realty improvement" in South Dakota. Contracting is defined as engaging in business as a contractor. A.R.S. § 42–1310.16(F)(1). A contractor is a person or company which undertakes to or offers to undertake to "construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building . . . or other structure, project, development, or improvement, or to do any part thereof . . . or works in connection therewith, and includes subcontractors and specialty contractors." A.R.S. § 42–1310.16(F)(2). Moreover, as we have already stated, permanently attaching goods to real property for compensation may be sufficient to constitute contracting, but it is not the *sine qua non* of contracting.

In addition, we are persuaded that the South Dakota court's criteria for what constitutes an improvement to real property are correct. Brink's overall work in Arizona, like its overall work in South Dakota, "improved the realty for electrical transmission

---

We also reject Brink's reliance on contractor licensure and real property tax cases. *Marston's Inc. v. Roman Catholic Church of Phoenix,* 132 Ariz. 90, 644 P.2d 244 (1982); *State ex rel. Vivian v. Heritage Shutters, Inc.,* 23 Ariz.App. 544, 534 P.2d 758 (1975); *Voight v. Ott,* 86 Ariz. 128, 341 P.2d 923 (1959); *Southwestern Public Service Co. v. Chaves County,* 85 N.M. 313, 512 P.2d 73

(1973); *State Dep't of Revenue v. Boeing Co.,* 85 Wash.2d 663, 538 P.2d 505 (1975); *Matter of Park Corrugated Box Corp.,* 249 F.Supp. 56 (D.N.J.1966). None of these decisions interprets a transaction privilege tax statute like the one before us, and all focus on the question of permanency of attachment, which we have held not dispositive here.

purposes." 472 N.W.2d at 499. The "movability" of the equipment installed does not detract from this conclusion. *Accord C.R. Fedrick, Inc. v. State Bd. of Equalization,* 204 Cal.App.3d 252, 251 Cal.Rptr. 305 (1988) (relocatable underground piping and gas compression stations held to be adapted to use and purpose for which realty was used, despite movability as use of realty changed); *Chula Vista Elec. Co. v. State Bd. of Equalization,* 53 Cal.App.3d 445, 125 Cal.Rptr. 827 (1975), *appeal dismissed, cert. denied* 426 U.S. 931, 96 S.Ct. 2642, 49 L.Ed.2d 383 (1976) (though salvageable as scrap, underground electrical transmission cable was particularly adapted to use with real property and was fixture).

■ Contrary to Brink's argument, the equipment it supplied was clearly intended to remain where installed "until the purpose to which the realty is devoted is accomplished." It was put in place with the intention that it be moved if and only if a change occurred in the particular type or level of use of the real property such that its presence there was no longer required. Brink engaged in the business of contracting when it installed this equipment, and is subject to the tax on contracting. We must reverse the tax court's ruling to the contrary.

### III.

The next issue is whether ADOR violated Brink's and Ball's equal protection rights by arbitrarily requiring a purchasing agent agreement for Brink and Ball to reap the benefit of retail exemptions. The trial court found such a violation.

Although neither Brink nor Ball had purchasing agent agreements, they argue that they should be taxed as if they did. They argue that proceeds from their contracts attributable to large pipes and electrical transmission materials and equipment should be regarded merely as reimbursements by the project owners for procuring retail-tax exempt items. They contend that requiring such an agreement is arbitrary and a violation of their right to equal protection of the laws.

■ The United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Arizona Constitution similarly states that

No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations.

Art. 2, § 13. Both the United States Constitution and the Arizona Constitution apply the same standard: Assuming the classification does not involve fundamental rights or a suspect class, a legislative tax classification does not violate the equal protection clause if "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Turf Paradise, Inc. v. Arizona Dep't of Revenue,* 178 Ariz. 246, 248, 872 P.2d 201, 203 (Tax 1994) (quoting *Heller v. Doe by Doe,* 509 U.S. 312, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)).

■ Brink and Ball claim that the purchasing agent requirement has no rational basis. However, this presupposes the first step of the equal protection analysis, which is whether Brink and Ball were treated differently from other taxpayers. *See Turf Paradise, Inc., supra.* They were not. Like any other construction contractor, Brink and Ball were free to enter into purchasing agent agreements. The fact that they chose not to structure their contracts in the most advantageous manner does not give rise to an equal protection violation.

Like any other contractor, Brink and Ball were free to take advantage of the retail exemption by including a purchasing agent agreement in their contract. We cannot hold that ADOR arbitrarily discriminated against them by refusing to allow them the exemptions in the absence of such an agreement.

### IV.

The final issue is whether it violates the taxpayers' equal protection rights to deny them a retail exemption when ADOR initially exempted all contractors, whether or not there was a purchasing agent agreement.

The purpose of the equal protection clause is to prevent the government from intentionally and arbitrarily discriminating against its citizens. *Sunday Lake Iron Co. v. Wakefield Tp.*, 247 U.S. 350, 352, 38 S.Ct. 495, 495, 62 L.Ed. 1154 (1918). Mere errors of judgments by officials do not rise to the level of discrimination. *Id.* at 353, 38 S.Ct. at 495; *Gosnell,* 154 Ariz. at 541, 744 P.2d at 453. Moreover, "the good faith of such officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party." *Sunday Lake Iron Co.,* 247 U.S. at 353, 38 S.Ct. at 495.

ADOR claims it mistakenly allowed contractors to claim retail exemptions and retracted the refunds or reached other settlements to correct the error. It was entitled to do so. Accordingly, we hold that ADOR did not violate Brink and Ball's equal protection rights.

For the foregoing reasons, we reverse the tax court's decision.

NOYES, and GARBARINO, JJ., concur.