502 P.2d 535

**UNION BANK, a corporation, Appellant,**

v.

**Shirlee K. PFEFFER, Appellee.**

**No. 2 CA–CIV 1151.**

Court of Appeals of Arizona,
Division 2.

Nov. 8, 1972.

Rehearing Denied Dec. 13, 1972.

Review Denied Jan. 9, 1973.

Robertson, Molloy, Fickett & Jones by John F. Molloy, Tucson, for appellant.

Scott & Bret Harte by William C. Scott, Tucson, for appellee.

HATHAWAY, Judge.

Appellee's late husband, Newton S. Pfeffer, borrowed $75,000 from the appellant, Union Bank, giving a promissory note. The appellant sued for the balance remaining unpaid on the note, but the lawsuit was dismissed upon the defendant-appellee's motion for summary judgment, hence this appeal.

The borrowed money was used exclusively in the business of N. Pfeffer, Inc., an Arizona corporation engaged in the jewelry business. Upon Newton Pfeffer's death, Union Bank presented the note to his widow, the administratrix of his estate, for payment. She allowed the claim as a separate obligation of the decedent, but Union Bank did not learn that it had been allowed as a separate obligation and not as a community obligation until after the three-month statute of limitations had expired. A.R.S. § 14–579. This court held that because Union Bank did not file suit against the estate within the time prescribed in A.R.S. § 14–579, and because the qualified allowance of the claim as a separate obligation amounted to a rejection of the claim as a community obligation, the bank was precluded from collecting against the community. In re Estate of Pfeffer, 16 Ariz.App. 147, 492 P.2d 27 (1971). Union Bank now attempts to hold Shirlee Pfeffer personally liable on the note, predicating her liability on three separate legal theories which we will discuss.

■■■■ The purpose of a motion for summary judgment is to test whether a genuine issue of material fact exists. In considering such motion, the court should view the evidence most favorably to the party against whom the motion is directed. Ramsouer v. Midland Valley R. Co., 135 F.2d 101 (8th Cir. 1943); Peterson v. Valley National Bank, 90 Ariz. 361, 368 P.2d 317 (1962). The movant for summary judgment has the burden of establishing that the material facts are not in dispute regardless of who has the ultimate burden of proof at trial. Elerick v. Rocklin, 102 Ariz. 78, 425 P.2d 103 (1967). Thereafter, the resisting party must show that a genuine factual dispute is presented. With these basic rules in mind, we will consider the theories of liability presented by appellant, Union Bank.

Should a surviving spouse be personally liable for a community obligation at least to the extent of her separate funds emanating from the community during the existence of the marriage?

Funds were transferred from the community of Newton Pfeffer and Shirlee Pfeffer to Shirlee Pfeffer by means of joint tenancy bank accounts, insurance policies, and trusts, before the $75,000 was borrowed from Union Bank. Union Bank contends that Mrs. Pfeffer should therefore be personally liable at least to the extent that her separate funds emanated from the community property. Mortensen v. Knight, 81 Ariz. 325, 305 P.2d 463 (1956) is submitted as authority for the proposition that a spouse is *personally* liable for community debts. There a wife, while driving a community automobile on community business committed a tort against a third person and thereafter died before suit was filed against the community. The court held the husband liable but limited recovery to the extent of his interest in the community at the time of its dissolution. The husband's liability was premised upon his statutory right to control community property and was held liable under the family purpose doctrine enunciated in Benton v. Regeser, 20 Ariz. 273, 179 P. 966 (1919), and therefore the case would appear inapplicable.

Union Bank *also relies on* Ellsworth v. Ellsworth, 5 Ariz.App. 89, 423 P.2d 364 (1967), where we held that the wife was personally liable after dissolution of the community by divorce, for one-half of the community debts "at least" to the extent that she had received community property from the dissolution of the marriage. Appellant argues that *Ellsworth* calls for a reevaluation of the doctrine that a wife's separate property is not liable for the debts of the community. We find, however, that *Ellsworth* makes no inroads into the well-established legal theory that a spouse's separate property is not liable for community debts. *Ellsworth* limits recovery for community obligations to funds

emanating from community assets upon dissolution of the community by divorce. Those funds remain respondable because a creditor or a tort victim at the time of the dissolution is entitled to recover from community assets.

In *Ellsworth,* no statutory procedure existed for reaching the transmuted funds (those funds which became separate as a result of the dissolution of the marriage). In the case at bench, however, a statutory procedure has been established for recovery from community funds after dissolution of the community by death, i. e., filing a claim against the estate of the decedent as a community claim.

Is a wife personally liable upon an indebtedness incurred by a community-owned corporation in which the wife was an active participant when the entire cash consideration for the indebtedness was placed in a joint bank account in which the wife was a joint tenant?

Appellant contends that the community is akin to a partnership and therefore the members of the community should similarly be held jointly and severally liable for community obligations. A.R.S. § 29–215. Appellant cites Ackel v. Ackel, 57 Ariz. 14, 110 P.2d 238 (1941), in which the court stated that a community was more like a partnership than any other institution. Be that as it may, the Arizona rule has been clearly established that separate property transmuted by means other than by dissolution of the community is exempt from community obligations. Fox v. Weissbach, 76 Ariz. 91, 259 P.2d 258 (1953). As further authority, appellant has quoted from Professor De Funiak's treatise as follows:

"Every debt that husband and wife have contracted in common, let them likewise pay it in common. And that is to say, that a debt that the husband contracts, although the wife does not authorize it and is not a party to the evidence of debt, she is obligated for half of the debt." De Funiak, Principles of Community Property (1943), Vol. I, note 35, p.

446 (quote is from Leyes Del Estilo Law 207, Appendix ID).[1]

■ However, in terms which we believe demonstrate that the wife does not incur personal liability under facts presented here, Professor De Funiak explains the operation of the statute, Leyes Del Estilo, as follows:

"The uniform construction given the statute [above quoted] was that debts contracted during marriage by the spouses or by either of them for the common benefit were payable from the common property, and this *included the wife's share of the common property*, even though the debt was contracted by the husband alone; however, even so, she was liable only to the extent of her half share of the community property and no more." De Funiak, Principles of Community Property, Vol. I, pp. 445–446 (1943).

The second theory of partnership on appeal is that Shirlee and Newton Pfeffer were conducting their business as commercial partners since they both had the right to the profits and to control the business. On motion for summary judgment, appellee presented evidence showing that the business was being conducted as a corporation, that the borrowed money was used exclusively for purposes of the jewelry business, and that Shirlee Pfeffer never participated in the management and control of the business, but merely acted as an employee.

■ This evidence required appellant to come forward with evidence, capable of proof at trial, showing Mrs. Pfeffer's participation as a partner which it failed to do. Therefore the trial court properly granted the motion for summary judgment since it is without dispute that the party resisting the motion cannot stand upon unverified pleadings once the movant has properly met its burden on summary judgment. Rules of Civ.Proc. 56(e), 16 A.R.S.

Was a fraudulent transfer pleaded and shown?

■ The third question presented, which was dismissed by the trial court on summary judgment, was appellee's liability under the Uniform Fraudulent Conveyances Act, A.R.S. § 44–1001 et seq. The motion for summary judgment attacked the sufficiency of the complaint to raise such an issue. Appellant's amended complaint reads as follows:[2]

"That, additionally or in the alternative, community assets were given to the defendant, either through the payment of premiums upon life insurance policies or otherwise at a time when the community obligations exceeded the community assets; that the total amount of such properties now owned or controlled by the defendant and/or transferred to her as aforesaid exceeds the total indebtedness described in paragraph II and III above."

■ In Ferguson v. Roberts, 64 Ariz. 357, 170 P.2d 855 (1946), the Arizona Supreme Court, referring to A.R.S. § 58–402 (predecessor of A.R.S. § 44–1004), stated "these sections contemplate the pleading of

---

1. *Leyes Del Estilo* was a Spanish legal code enacted in 1310 which adopted many of the laws which had been enunciated in the famous Spanish legal code enacted in 1263 called *Las Siete Partidas*, from which much of our community property law derived. The Arizona Supreme Court has said that the Spanish law, so far as it is consistent with the laws and customs of this state may be applied to interpret the community property system. Pendleton v. Brown, 25 Ariz. 604, 221 P. 213 (1923).

2. Appellant points out that Newton Pfeffer, during his lifetime, transferred community property to his spouse by means of joint

tenancies, insurance proceeds and trusts; appellant contends that if this court permits this to be done, most community creditors will be left without a remedy. It is without dispute that every spouse may give his interest in the community to the other after the property has been acquired, so long as the rights of creditors are not affected by such gifts. Lincoln Fire Ins. Co. v. Barnes, 53 Ariz. 264, 88 P.2d 533 (1939). If a creditor can show that at the time of the transfer, rights of creditors were being violated then the transfer is ineffectual. In the case at bench appellant failed to plead any violation of creditors' rights other than in the quoted part of the complaint.

**390**

*facts* within the provisions of [A.R.S.] § 58–402, and proof of the fact allegations warranting equitable relief." In order to establish a fraudulent conveyance under this section, three elements must be pleaded and proved—first, there must be a conveyance or the creation of an obligation; second, the transferor must be, at the time of the conveyance, insolvent or the conveyance must render him insolvent; third, the conveyance must have been made, or the obligation incurred, without a fair consideration. Ferguson v. Roberts, *supra*; Sackin v. Kersting, 105 Ariz. 464, 466 P.2d 758 (1970); Tokar v. Redman, 138 Cal. App.2d 350, 291 P.2d 987 (1956).

[11] The amended complaint alleges only the first two elements; it fails to allege that the transfer to the appellee were without a fair consideration. Therefore, even if the facts alleged were proven, such proof would be insufficient to establish a fraudulent conveyance.

Affirmed.

KRUCKER, C. J., and HOWARD, J., concur.