640 P.2d 198

Fred RHOADS and Mattie Rhoads, husband and wife, Plaintiffs/Appellants,

v.

HARVEY PUBLICATIONS, INC., Sad Sack, Inc., Alfred Harvey, Leon Harvey, and Robert Harvey, Defendants/Appellees.

No. 2 CA–CIV 3954.

Court of Appeals of Arizona, Division 2.

Dec. 2, 1981.

Rehearing Denied Jan. 11, 1982.

Review Denied Feb. 2, 1982.

Lovallo & Stirton by Joseph A. Lovallo and Charles P. Stirton, Tucson, for plaintiffs/appellants.

Messing & Glicksman by William Messing and Elliot Glicksman, Tucson, for defendants/appellees.

OPINION

BIRDSALL, Judge.

This is the second appeal in a case founded upon allegations of fraud in the acquisition of copyrights. In the first appeal, this court reversed an order dismissing plaintiffs/appellants' complaint for lack of personal jurisdiction over defendants/appellees. *Rhoads v. Harvey Publications, Inc.,*

124 Ariz. 406, 604 P.2d 670 (App.1979). In this appeal we reverse a summary judgment in favor of appellees.

The facts of the case, viewed most favorably to appellants, are as follows. Appellant Fred Rhoads is a cartoonist. Appellees are New York corporations and directors, officers, and principal shareholders of those corporations, engaged in the business of publishing comic books. For twenty-three years beginning in 1954, Rhoads was engaged by appellees to produce cartoons featuring the character "Sad Sack" for publication in appellees' comic books. During that time, appellees told Rhoads that he was an employee of their business. Believing that an employee was legally unable to reserve the copyrights to work done for his employers, Rhoads did not do so. In fact, he waived all copyrights by executing indorsements to that effect on payment checks received from appellees. Upon termination of the parties' relationship in 1977, Rhoads learned that he had actually been an independent contractor. He then brought suit alleging that appellees had fraudulently represented his status so that he would not retain the copyrights to his work.

Upon remand following the first appeal, appellees moved for summary judgment. By supporting affidavits and certified business records they contended that they had not told Rhoads that he was an employee, that Rhoads had been given no other reason to believe that he was an employee, and that Rhoads had known he was not an employee. Appellants responded with controverting affidavits alleging that appellees had repeatedly told Rhoads he was an employee and that Rhoads had received "vacation pay" on ten occasions. Other documents showed that Rhoads had been insured under a group insurance policy issued to appellees and that appellee Alfred Harvey had referred to Rhoads as an "employee" in correspondence with appellants' counsel.

The trial court granted the motion and entered judgment stating:

"The Court Concludes that, while the letter of March 17, 1978, refers to Mr. Rhoads as an employee, and while the testimony of both Mr. and Mrs. Rhoads indicates that Mr. Harvey referred to them (sic) as employees (sic), one must examine the actual factual situation as it existed by and between the parties over the term of 24 years.

The Court Further Concludes, taking all factors into consideration, that the relationship by and between the parties in this case was not that of employee and employer, but rather than (sic) Mr. Rhaods (sic) was an independent contractor. The matter of the March 17, 1978 letter, and the Plaintiffs' statements are conclusions unsupported by fact."

■ We do not see how the finding embodied in this judgment can support a summary judgment in favor of appellees. On its face, it appears to be a finding as to a disputed fact, which has no place in a summary judgment, since the very existence of disputed facts, if material, precludes summary judgment. In actuality, however, the finding that Rhoads was an independent contractor did not resolve a factual dispute. Both parties were in complete agreement that Rhoads had been an independent contractor. The questions before the trial court were whether appellees had *told* Rhoads that he was an employee and whether Rhoads had *believed* he was an employee. Those questions could not be answered without weighing the conflicting evidence presented by the parties. Appellees, therefore, were not entitled to judgment on the grounds raised in their motion.

The parties, however, have complicated this case by making new arguments on appeal. Fearing, perhaps, that we will affirm on the grounds now urged by appellees, appellants contend that their fraud claim is based not only upon the misrepresentation of Rhoads' status, but also upon the publishers' failure to inform Rhoads of the true value of his work and of his rights to retain copyrights to his work. Relying upon *Roberts v. Sears, Roebuck and Co.*, 573 F.2d 976 (7th Cir. 1978), they contend that a relationship of trust and confidence existed be-

tween Rhoads and the publishers, that the publishers therefore had a duty to make full disclosure, and that their failure to do so was the equivalent of a fraudulent misrepresentation. *See Leigh v. Loyd*, 74 Ariz. 84, 244 P.2d 356 (1952).

■ Adhering to the rule that a summary judgment may not be reversed on grounds first advanced on appeal, *Sullins v. Third and Catalina Construction Partnership*, 124 Ariz. 114, 602 P.2d 495 (App.1979), we will not consider this new argument. If appellants intended to present a claim of fraud based upon non-disclosure, it was their duty to plead that claim in their complaint, and to plead it with particularity. Rule 9(b), Arizona Rules of Civil Procedure, 16 A.R.S. Even a strained reading of appellants' complaint reveals no indication that their claim of fraud is based upon anything except the alleged misrepresentation that Rhoads was an employee.

Appellees' arguments, which they also failed to present below, are 1) that the alleged representation, if made, was not material and therefore not a proximate cause of appellants' claimed damages, and 2) that the alleged representation will not support an action in fraud because it is one of law or legal opinion, rather than one of fact. They therefore argue that they were entitled to judgment as a matter of law and that the judgment should be affirmed even though it was entered for the wrong reasons.

■ There is certainly ample authority to suggest that an appellate court may affirm a summary judgment on grounds not considered below. E.g., *Helena Rubinstein, Inc. v. Bau*, 433 F.2d 1021, 1023 (9th Cir. 1970); *See also* 10 Wright and Miller, *Federal Practice and Procedure*, § 2716 p. 440. This power, however, must be exercised with extreme caution. A party moving for summary judgment always bears the burden of proving the absence of a material factual dispute, e.g., *United Bank v. Pfeffer*, 18 Ariz.App. 386, 502 P.2d 535 (1972), and the party opposing the motion is only required to show a dispute as to material facts relevant to the legal issues which the

moving party claims to be dispositive of the cause. *Fountain v. Filson*, 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971 (1949). Affirming a summary judgment on new grounds, therefore, may deprive the non-moving party of the opportunity to present facts which are relevant to the new issues, but which were not relevant to the issues raised below. Keeping in mind that the slightest factual doubt must be resolved in favor of the non-moving party, *Grain Dealers Mutual Insurance Co. v. James*, 118 Ariz. 116, 575 P.2d 315 (1978), the appellate court may affirm on new grounds only if there are no conceivable facts which would allow the non-moving party to prevail on the new issues. That is not the case here.

To facilitate discussion, we shall set forth the nine essential elements of fraud repeatedly enumerated in Arizona cases:

    1) a representation

    2) its falsity

    3) its materiality

    4) the speaker's knowledge of its falsity or ignorance of its truth

    5) the speaker's intent that it be acted upon by and in the manner reasonably contemplated

    6) the hearer's ignorance of its falsity

    7) the hearer's reliance upon its truth

    8) the hearer's right to rely thereon, and

    9) the hearer's consequent and proximate injury.

*Peery v. Hansen*, 120 Ariz. 266, 585 P.2d 574 (App.1978); *Lininger v. Sonenblick*, 23 Ariz. App. 266, 532 P.2d 538 (1975); *Carrel v. Lux*, 101 Ariz. 430, 420 P.2d 564 (1966).

Appellees' argument that the alleged misrepresentation, if made, was not material is directed primarily at the element numbered 3) above and is based upon federal copyright law. They contend that the copyright law in effect during the Rhoads-Harvey relationship made no material distinction between an employee and an independent contractor, *Brattleboro Publishing Co. v. Winmill Publishing Corp.*, 369 F.2d 565 (2nd Cir. 1966), and that both were equally able to reserve the copyrights to work done for

an employer. This argument misconceives the meaning of "materiality" as that term applies to a fraudulent representation. In this context, materiality is not dependent upon whether the matter represented would be significant to a court deciding a case arising under law applicable to the transaction, or to a person versed in that law. As is stated in § 538(2)(b) of the Restatement of the Law of Torts 2d, the matter is material if:

"... the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it."

The accompanying comment explains:

"Even though the matter misrepresented is one to which a reasonable man would not attach any importance in determining his course of action in the transaction in (sic) hand, it is nevertheless material if the maker knows that the recipient, because of his own peculiarities, is likely to attach importance to it. There are many persons whose judgment, even in important transactions, is likely to be determined by considerations that the normal man would regard as altogether trivial or even ridiculous. One who practices upon another's known idiosyncracies cannot complain if he is held liable when he is successful in what he is endeavoring to accomplish."

Here, then, there are conceivable facts under which the alleged misrepresentation of Rhoads' status would be material, even though the distinction between employee and independent contractor was not actually significant under the federal copyright law. If the distinction was important to Rhoads, e.g., if Rhoads honestly believed that only an independent contractor could retain copyrights, and this was known or should have been known to the publishers, then a false representation of Rhoads' status was material. These facts do not appear in the record before us, because they were not relevant to the issues raised below. We cannot say, therefore, that those facts do not exist or that the representation, if made, was not material.

■ Appellees' second new argument characterizes the alleged misrepresentation as one of law or legal opinion, and is based upon cases stating the general rule that such a representation will not give rise to actionable fraud. *See Pleasants v. Home Federal Savings and Loan Assoc.*, 116 Ariz. 319, 569 P.2d 261 (App.1977); *Barnes v. Lopez*, 25 Ariz.App. 477, 544 P.2d 694 (1976). Even assuming *arguendo* that this representation would be one of law,[1] we cannot agree with appellees' argument.

The cited cases do not state an independent rule of law. The elements of fraud set forth above contain no explicit requirement that a fraudulent representation be one of fact, rather than law or legal opinion. As our supreme court explained in *Waugh v. Lennard*, 69 Ariz. 214, 211 P.2d 806 (1949):

"The well-recognized rule is that a misrepresentation as to a matter of law will not ordinarily support an action for fraud or deceit, nor constitute an estoppel to rely upon the statute of limitations. 53 C.J.S. Limitations of Actions § 25. The reason for the rule is that representations as to matters of law are ordinarily considered to be expressions of opinion and justifiable reliance cannot be had upon mere opinion of another. However, the above rule does not apply where (1) the party making the representations is especially skilled in the law and the party to whom the representations are made is not so skilled, or (2) where there exists a relation of trust and confidence between the parties. [citations omitted] Under the exceptions above stated the reason for the general rule disappears because in both instances the party to whom the representations are made may be justi-

---

1. The alleged representation appears to be one of both law and fact, since a statement of legal opinion usually contains at least three implicit statements of fact: 1) that facts exist to justify the opinion, 2) that the speaker is competent to draw the stated conclusion, and 3) that the speaker believes the stated conclusion.

fied in relying upon the representations." 69 Ariz. at 227, 211 P.2d at 814–815.

Close examination reveals, therefore, that the rule relied upon by appellees is subject to at least two exceptions.[2] Whether either of those exceptions presents itself in this case is a question of fact. The record does not reveal whether Rhoads or the publishers were skilled in the law. Nor does it indicate whether a relationship of trust and confidence (not necessarily a fiduciary relationship, *See Roberts v. Sears, Roebuck and Co., supra*; Restatement of the Law of Torts 2d § 542) existed between them. Since every factual doubt must be resolved in appellants' favor, we may not presume the absence of such facts and thus cannot hold as a matter of law that Rhoads had no right to rely upon a representation that he was an employee rather than an independent contractor.

Reversed and remanded for further proceedings.

HATHAWAY, C. J., and HOWARD, J., concur.

---

**2.** The Restatement of the Law of Torts 2d now lists four exceptions. *See* §§ 545, 542. As the text explains, however, even one exception, if dependent upon facts not relevant below, precludes affirming on appellees' theory.