957 P.2d 1373

**SAMARITAN HEALTH SYSTEM, an Arizona non-profit corporation, Plaintiff–Appellant, Cross–Appellee,**

v.

**Delores CALDWELL, Defendant–Appellee, Cross–Appellant.**

**No. 1 CA–CV 96–0580.**

Court of Appeals of Arizona, Division 1, Department D.

May 7, 1998.

Gammage & Burnham, P.L.C. by Cameron C. Artigue, Richard B. Burnham, Phoenix, for Plaintiff–Appellant, Cross–Appellee.

Ridenour, Swenson, Cleere & Evans, P.C. by Gregory P. Gillis, Phoenix, for Defendant–Appellee, Cross–Appellant.

## OPINION

EHRLICH, Judge.

¶ 1   This case raises questions of the extent to which a hospital can look to the

assets of a decedent's wife for payment of the expenses of the decedent's last illness. The trial court concluded that the hospital was entitled to collect its fees from the spouse but only to the extent of her one-half share of the community property owned at the time of death; it declined to allow the hospital to reach the separate property of the spouse. We affirm in part, reverse in part and remand this matter for further proceedings. The hospital may look to the entirety of a spouse's community property for payment of a community obligation, but it may not reach the separate property of a non-contracting spouse acquired before or during marriage.

## FACTS AND PROCEDURAL HISTORY

¶2   Thomas Caldwell was admitted twice to Havasu Samaritan Regional Hospital before being transferred to Good Samaritan Regional Medical Center, where he received care until his death. During the admissions process of Havasu Samaritan, Mr. Caldwell signed a financial agreement form, agreeing to be responsible for payment of the bill. Before he was transported to Good Samaritan, Mr. Caldwell executed a Durable Power of Attorney, appointing his wife, Delores Caldwell, as his attorney-in-fact. Mrs. Caldwell executed the financial agreement necessary for her husband's treatment at Good Samaritan, subscribing below her signature the initials "POA" to indicate that she was acting on Mr. Caldwell's behalf through the power of attorney she had been given.[1]

¶3   Twenty-three months after Mr. Caldwell's death, Samaritan Health System ("Samaritan") filed suit to recover payment for its fees and charges, naming both Mr. Caldwell's estate and Mrs. Caldwell as defendants. However, probate of Mr. Caldwell's estate had never been opened. Rather than initiating probate, Samaritan chose to proceed with the action only as to Mrs. Caldwell.

¶4   The trial court decided that Mrs. Caldwell's liability was limited to her one-half interest in the community property which she and her husband had owned. It held that her sole and separate property was not implicated because she had signed the financial agreement only on her husband's behalf pursuant to the power of attorney she had been granted. It also ruled that Mr. Caldwell's estate was relieved of any responsibility for the payment of the hospital bills because no claim had been presented to his estate within two years after his death as required by ARIZ.REV.STAT. ANN. ("A.R.S.") section 14–3803(B)(1995). The court then entered a formal judgment in the amount of $157,283.82 against Mrs. Caldwell's one-half interest in the community property she had held with her husband.

¶5   Samaritan appeals, contending that the judgment should be against Mrs. Caldwell rather than only against her half of the community property. Mrs. Caldwell cross-appeals, arguing that the trial court erred in finding her liable at all because of Samaritan's failure to present a timely claim against the community in probate of her husband's estate.

## DISCUSSION [2]

¶6   Samaritan argues that its judgment against Mrs. Caldwell should not be limited to her one-half share of the community property but should be enforceable against her. It maintains that, because its fees were incurred as a community obligation, it had the right to pursue payment of its bill from Mr. Caldwell's estate, Mrs. Caldwell or both.

¶7   During marriage, either spouse may contract a debt for the benefit of the community, A.R.S. § 25–215(D)(1991),[3] and

---

1.   On appeal, Samaritan no longer argues, as it did below, that it could not have known what Mrs. Caldwell meant by adding "POA" to her signature. It could understand from the financial forms that Samaritan gave him to sign that he had filled in and signed the place on those forms indicating that he was giving his wife power of attorney.

2.   When the material facts are undisputed, as is true in this case, we determine whether the trial court correctly applied the substantive law to those facts. *Brink Elec. Constr. Co. v. Arizona Dept. of Revenue*, 184 Ariz. 354, 358, 909 P.2d 421, 425 (App.1995). Questions of law are reviewed *de novo. Id.*

3.   The statute provides in relevant part:

D.   ... [E]ither spouse may contract debts and otherwise act for the benefit of the community. In an action on such a debt or obli-

necessary medical care provided to a spouse is presumed to be "intended to benefit the community, which is the test of whether an obligation is a community debt." *Phoenix Baptist Hosp. & Med. Ctr. v. Aiken,* 179 Ariz. 289, 294, 877 P.2d 1345, 1350 (App.1994) (citation omitted); *see also Ivancovich v. Meier,* 122 Ariz. 346, 352, 595 P.2d 24, 30 (1979) (expenses of last illness community obligation). Thus, and as acknowledged by Mrs. Caldwell, the hospital fees for Mr. Caldwell were a community obligation.

**¶ 8** However, A.R.S. section 25–215, the statute relied upon, "clearly contemplates an existing marriage, and mandates how property should be used to satisfy debts incurred during marriage and collected while the spouses are still married." *Community Guardian Bank v. Hamlin,* 182 Ariz. 627, 630, 898 P.2d 1005, 1008 (App.1995). It does not apply to a marriage that has ended, but, upon divorce, community debts remain the joint obligations of both parties, and a creditor can look to either spouse for satisfaction of the entire debt. *Id.* at 630–31, 898 P.2d at 1008–09. Samaritan argues by analogy to *Hamlin* that the same result should obtain when the marriage has ended from the death of one spouse.[4]

**¶ 9** Several Arizona Supreme Court cases address in general terms what happens to community property and community debts when one spouse dies. In *Greer v. Goesling,* 54 Ariz. 488, 494–95, 97 P.2d 218, 220 (1939), the court said:

> When the community status is dissolved by death, the community estate becomes *ipso facto* in effect two separate estates, except as to the rights of community creditors. The surviving spouse takes half of the

estate, not as matter of descent but as a matter of right, subject, however, to the community debts. The remaining half goes to the heirs of the deceased spouse under the statute of descent and distribution, or to devisees and legatees by will, but is subject (a) to its ratable share of community debts, and (b) to any separate debts of the deceased.

(Citation omitted.) Again, in *In re Monaghan's Estate,* 71 Ariz. 334, 337, 227 P.2d 227, 229 (1951), the court stated that the survivor takes one-half of the community property in her own right as owner and not as heir but that the property is subject to the community debts. In *Ivancovich,* the court held that expenses of a last illness are a charge against the community assets to be satisfied first from those assets and then from the deceased's separate estate if the community assets are insufficient. 122 Ariz. at 352, 595 P.2d at 30. While these cases say that the community property remains encumbered by the community debt, they do not address to what degree, if any, community debts are to be imposed as an obligation on a surviving spouse.

**¶ 10** We agree with Samaritan in discerning no reason why the result should differ when the marriage is dissolved by the death of a spouse rather than divorce. Like the bank in *Hamlin,* Samaritan is owed in a post-marital context a debt that was incurred as a community obligation. Although the community ceased to exist when Mr. Caldwell died, there was an encumbrance upon that community in the nature of the debt owed to Samaritan at the time of Mr. Caldwell's death. Samaritan thus was entitled to seek satisfaction of that debt.[5]

---

gation the spouses shall be sued jointly and the debt or obligation shall be satisfied: first, from the community property, and second, from the separate property of the spouse contracting the debt or obligation.

4. Mrs. Caldwell relies on *Aiken,* 179 Ariz. at 294, 877 P.2d at 1350, but it fails to address the issue. It was a case involving a married couple in which a hospital was seeking payment of its fees from the separate property of the non-contracting spouse, a disposition clearly governed and prohibited by A.R.S. section 25–215(D).

5. Mrs. Caldwell argues that *Union Bank v. Pfeffer,* 18 Ariz.App. 386, 502 P.2d 535 (1972), stands for the proposition that a surviving spouse may not be held personally liable for a community obligation incurred by the decedent. However, in *Pfeffer,* Division Two did not articulate what impact, if any, the prior characterization of the debt as the decedent's separate obligation had on its ultimate holding. In the absence of this analysis, we decline to follow its resolution of this issue. *See Neil B. McGinnis Equip. Co. v. Henson,* 2 Ariz.App. 59, 62–62, 406 P.2d 409, 412–13 (1965) (one division of the court of appeals is not

¶ 11   As this court said in *Hamlin,* 182 Ariz. at 631–32, 898 P.2d at 1009–10, although the community no longer exists after dissolution, its obligations become the subjects of joint liability of the former spouses.   It would be incongruous to reduce a creditor's ability to seek satisfaction of a community obligation because the community ended with the death of a spouse rather than dissolution of a marriage.   To hold otherwise could leave a creditor who contracts with or has a judgment against a marital community without an adequate remedy if the debt remains unsatisfied upon the death of the contracting spouse.   Indeed, there is support for this proposition in the Arizona Probate Code. The bar to the presentation of claims in A.R.S. section 14–3803 is restricted to claims against the decedent's estate; nothing limits a creditor's right to pursue a claim against a decedent's joint obligor.   *Cf.* UNIF. PROBATE CODE § 3–803, 8 U.L.A. 355, comment (1983).

¶ 12   The analogy with *Hamlin* also applies to the status of a *non-contracting* spouse's separate property acquired before or during marriage.   It may not be reached in satisfaction of a community debt.

¶ 13   Mrs.   Caldwell responds that the trial court should have shielded her share of the community property from liability for the hospital bills because Samaritan failed to have Mr. Caldwell's estate opened so that Samaritan could present the estate with a timely claim for payment.   Pursuant to A.R.S. section 14–3301(A)(7)(1995), a decedent's creditor may initiate probate proceedings and be appointed personal representative 45 days after the death if no one else with priority has done so.   When presented with a proper claim, the personal representative determines whether it is a "community claim payable out of community property, or . . . a separate claim payable out of separate property and the balance of the decedent's half of community property." A.R.S. § 14–3806(A)(1995).   If the estate has community debts, the surviving spouse's share of the community property is subject to administration until the time for presentation of claims has expired and thereafter only to the extent

necessary to pay community claims.   A.R.S. § 14–3101(A) (1995).   Even if the personal representative does not take the permitted steps to shorten the time for presentation of creditors' claims to the estate, "a claim against a decedent's estate arising before the death of the decedent presented more than two years after the decedent's death is barred."   A.R.S. § 14–3803(B).

¶ 14   Samaritan accepts that its failure to initiate probate and present a claim against Mr. Caldwell's estate within the two-year statutory period bars it from claiming against his estate.   It argues, though, that this statute cannot be interpreted as barring it from pursuing suit against Mrs. Caldwell merely because it did not choose to present a timely claim against Mr. Caldwell's estate.

¶ 15   Although it is obviously the intent of the law to provide an expeditious means of resolving creditor claims against the community by allowing the personal representative access to the surviving spouse's share for this purpose, nothing says that filing a claim against the estate is the only way to pursue payment of a community debt.   In order for the limitations provision of A.R.S. section 14–3803(B) to bar suit against the surviving spouse, there would have to be language making it clear that this was to be the effect of the statute.   Instead, the statute provides only that "a claim against a decedent's estate" is to be barred under the circumstances stated.   It does not address claims against the surviving spouse.

¶ 16   Mrs.   Caldwell directs our attention to certain language from A.R.S. section 14–3803 as proof that the legislature did not intend to limit the non-claim provision to a presentation of claims against the decedent's estate:

A.   All claims against a decedent's estate which arose before the death of the decedent, including claims of the state and any of its political subdivisions, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort or other legal basis, if not barred earlier by any other statute of limitations, are barred against the estate, the

bound by a decision of the other division of the court).

personal representative and the heirs and devisees of the decedent, unless presented either within four months after the date of the first publication of notice to creditors, or if the creditor is known or reasonably ascertainable to the personal representative, within four months of the notice as prescribed under § 14–3801....

B. Notwithstanding subsection A of this section, a claim against a decedent's estate arising before the death of the decedent presented more than two years after the decedent's death is barred.

¶ 17 Mrs. Caldwell argues that, as her late husband's devisee, she is entitled to the statute's protection. We disagree with that expansive reading of the statute's scope. The bar of A.R.S. section 14–3803 does not apply outside the context of a creditor's claim against the decedent's estate. And, in fact, while a creditor like Samaritan may seek payment from the decedent's estate in probate proceedings, significant assets may transfer outside of probate, *see Sanders v. Boyer,* 126 Ariz. 235, 240, 613 P.2d 1291, 1296 (App.1980); *Estate of Tovrea v. Nolan,* 173 Ariz. 568, 570, 845 P.2d 494, 496 (App.1992), making the pursuit of payment in probate meaningless.

¶ 18 In sum, Samaritan may proceed against Mrs. Caldwell for payment of the obligation incurred by the community of which she was a partner. Because she was the non-contracting spouse, having undertaken financial responsibility for the hospital fees only as her husband's attorney in fact, Samaritan may not, however, reach Mrs. Caldwell's separate property.

### ATTORNEYS' FEES

¶ 19 Both parties request attorneys' fees on appeal pursuant to A.R.S. section 12–341.01(A)(1992). Samaritan achieved partial reversal of the summary judgment against it, and Mrs. Caldwell prevailed in part. The appeal and cross-appeal settled a novel legal issue central to the case. In the exercise of our discretion, we direct each party to bear its or her own fees and costs on appeal.

RYAN, P.J., and KLEINSCHMIDT, J., concur.