NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

FIRST FIDELITY BANK, a national association, *Plaintiff/Appellee*,

*v.*

MICHAEL A. TOLL and INGA TOLL, as husband and wife; and
DISTINCTIVE DRYWALL, L.L.C., an Arizona limited liability company,
*Defendants/Appellants.*

No. 1 CA-CV 14-0184
FILED 4-23-2015

Appeal from the Superior Court in Maricopa County
No.  CV2011-018183
The Honorable John Christian Rea, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED IN PART**

COUNSEL

Engelman Berger, P.C., Phoenix
By David Wm. Engelman, Lorena C. Van Assche, Bradley D. Pack
*Counsel for Plaintiff/Appellee*

Law Office of Lyndon B. Steimel, Scottsdale
By Lyndon B. Steimel
*Counsel for Defendants/Appellants*

---

## MEMORANDUM DECISION

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

¶1        Michael and Inga Toll and Distinctive Drywall, L.L.C., appeal the trial court's judgment in favor of First Fidelity Bank (First Fidelity) and against Michael's contribution to the marital community.[1]    For the following reasons, we affirm the judgment against Distinctive Drywall, L.L.C. and Michael individually, vacate the judgment against Michael's contribution to the marital community, and vacate and remand to the trial court for a redetermination of any award of attorneys' fees and costs.

### FACTS AND PROCEDURAL HISTORY

¶2        In June 2006, Distinctive Drywall, L.L.C. (the Borrower) obtained a $400,000 business loan from First Fidelity's predecessor in interest.  In connection with the debt, Michael signed a continuing personal guaranty (the Pre-Marital Guaranty).  Michael and Inga were married in December 2006.

¶3        In July 2008, First Fidelity entered into a second $400,000 business loan agreement with the Borrower to "[r]efinance a commercial office condo [and] provid[e] additional cash to reimburse borrower for out of pocket expenses."  The parties agreed at oral argument that the principal balance of the first loan was satisfied *in toto* from these sums.  Michael signed a second personal guaranty (the Post-Marital Guaranty); Inga did not.  The Post-Marital Guaranty expressly stated it did not invalidate any prior guaranties, and First Fidelity's rights under all guaranties were cumulative.

¶4        When the Borrower defaulted on the second loan agreement, First Fidelity foreclosed upon the collateral and sought a judgment for the deficiency against the Tolls and their marital community "to the extent of the value of Michael A. Toll's contribution to the community property that

---

[1]    The Tolls do not dispute entry of judgment against Michael Toll individually or Distinctive Drywall, L.L.C.

would have been his separate property if single." The Tolls moved to dismiss, arguing Inga could not be liable for the debt because she did not sign either guaranty. First Fidelity, citing *Flexmaster Aluminum Awning Co. v. Hirschberg*, 173 Ariz. 83, 87, 839 P.2d 1128, 1132 (App. 1992), responded that a non-debtor spouse was both a necessary and proper party in a suit to establish the limited liability of the community under Arizona Revised Statutes (A.R.S.) section 25-215(B),[2] for separate, pre-marital debts, and that the statute was designed to prevent a single person from unfairly shielding his property from the claims of creditors simply by getting married. Noting no reply brief was filed, the trial court denied the Tolls' motion.

¶5 First Fidelity then filed a motion for partial summary judgment as to liability for breach of the guaranties. In response, the Tolls conceded liability to the extent of Michael's separate property, but re-urged their position that neither Inga's separate property nor the Tolls' community property could be used to satisfy the debt because Inga did not sign either guaranty. In its reply, First Fidelity alleged it was seeking relief for a pre-marital debt, and therefore, was authorized by A.R.S. § 25-215(B) to collect against community property to the extent of Michael's contribution.

¶6 The trial court granted First Fidelity's motion for partial summary judgment. Because the parties had previously stipulated to the fair market value of the collateral, no substantive issue remained and the court entered a money judgment in the amount of $99,102.18, plus accruing interest, in favor of First Fidelity and against Distinctive Drywall, L.L.C., Michael A. Toll individually, and "the marital community consisting of Michael A. Toll and Inga Toll to the extent of the value of Michael A. Toll's contribution to the community property which would have been his separate property if single."

¶7 The Tolls filed a motion to set aside the judgment, arguing for the first time that the Pre-Marital Guaranty was of no force and effect because it was extinguished and replaced by the Post-Marital Guaranty. And, because only Michael, and not Inga, executed the Post-Marital Guaranty, First Fidelity was unable to use the Tolls' community property to satisfy the debt pursuant to A.R.S. §§ 25-214(C)(2) and -215(D). The trial court denied the motion and entered a supplemental judgment awarding First Fidelity its attorneys' fees and costs pursuant to A.R.S. §§ 12-341, and -341.01 and the terms of the loan agreements and guaranties. The Tolls

---

[2] Absent material changes from the relevant date, we cite a statute's current version.

timely appealed.  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

### I. The Pre-Marital Guaranty Was Not Terminated.

¶8        The Tolls first argue that Michael's obligation under the Pre-Marital Guaranty terminated upon payment of the original loan amount, and that the Pre-Marital Guaranty was "extinguished by operation of novation" upon execution of the Post-Marital Guaranty.[3]  Therefore, they assert First Fidelity was limited to its rights of recovery conferred under the Post-Marital Guaranty, and the trial court erred in granting judgment in First Fidelity's favor.  We review issues of contract interpretation *de novo*, *Lerner v. DMB Realty, L.L.C.*, 234 Ariz. 397, 401, ¶ 10, 322 P.3d 909, 913 (App. 2014) (citing *Elm Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 290, ¶ 15, 246 P.3d 938, 941 (App. 2010)), and will affirm the judgment of the trial court if any reasonable view of the facts and law support it.  *Pugh v. Cook*, 153 Ariz. 246, 248, 735 P.2d 856, 858 (App. 1987).

¶9        Contrary to the Tolls' assertion, the Pre-Marital Guaranty was not extinguished.  That guaranty specifically provided it was continuing in nature, stating:

> **CONTINUING GUARANTY.**  THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS.  ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE

---

[3]        First Fidelity asserts the Tolls waived these arguments on appeal by failing to timely assert them in the trial court.  In our discretion, we choose to address them.  *See Miller v. Hehlen*, 209 Ariz. 462, 467 n.5, ¶ 15, 104 P.3d 193, 198 n.5 (App. 2005) (citing *City of Tempe v. Fleming*, 168 Ariz. 454, 456, 815 P.2d 1, 3 (App. 1991)).

OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

The Pre-Marital Guaranty further provided it would "continue in full force" until First Fidelity received written revocation from Michael, with the final paragraph immediately preceding Michael's signature reiterating that "THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED 'DURATION OF GUARANTY.'" (Emphasis omitted). Additionally, the specific language of the Post-Marital Guaranty expressly stated it did not extinguish any prior guaranty, and First Fidelity's rights under all guaranties were cumulative.

¶10        While contracts of guaranty are strictly construed to limit the liability of the guarantor, *Horizon Res. Bethany Ltd. v. Cutco Indus., Inc.*, 180 Ariz. 72, 76, 881 P.2d 1177, 1181 (App. 1994) (citing *Consol. Roofing & Supply Co. v. Grimm*, 140 Ariz. 452, 455, 682 P.2d 457, 460 (App. 1984)), we cannot ignore the express terms of the contracts freely entered into by the parties. *Tenet Healthsystem TGH, Inc. v. Silver*, 203 Ariz. 217, 221, ¶ 11, 52 P.3d 786, 790 (App. 2002) (declining to adopt interpretation that would "vitiate[] the guaranty's language"); *Consol. Roofing*, 140 Ariz. at 455, 682 P.2d at 460 (noting clear and unambiguous language of guaranty must be given effect as written) (citations omitted). Here, the Pre-Marital Guaranty does not purport to secure any specific note, or even any specific debt, but rather all indebtedness "now existing or hereafter arising." It contains multiple provisions specifically describing the continuing nature of the Pre-Marital Guaranty and the proper process for revocation. The Tolls have not suggested any impropriety in the execution of the Pre-Marital or Post-Marital Guaranties, and Michael is bound by the express terms of the instruments he freely executed. *See Wolff v. First Nat'l Bank*, 47 Ariz. 97, 106, 53 P.2d 1077, 1081 (1936) (enforcing guaranty "expressly declared to be continuing in its nature").

¶11        Based upon the undisputed facts and applicable law, we find no error in the trial court's implicit finding that the Pre-Marital Guaranty remained in force and effect at the time the second loan agreement was breached. Effectively, while the debt accompanying execution of the Pre-Marital Guaranty was satisfied, Michael's potential liability remained in place. This conclusion does not, however, resolve the question of whether Michael's contribution to the marital community may be used to satisfy debts owed to First Fidelity under the second loan agreement.

## II. The Pre-Marital Guaranty Does Not Bind the Marital Community to Debts Arising Post-Marriage.

¶12        The Tolls next argue the trial court erred by entering judgment against Michael's contribution to the community property in contravention of A.R.S. §§ 25-214(C) and -215(B).  The extent to which the marital community can be liable for debts contracted for by a single member presents a question of law, which we review *de novo.  See Samaritan Health Sys. v. Caldwell*, 191 Ariz. 479, 482 n.2, 957 P.2d 1373, 1375 n.2 (App 1998) (citing *Brink Elec. Constr. Co. v. Ariz. Dep't of Revenue*, 184 Ariz. 354, 358, 909 P.2d 421, 425 (App. 1995)).

¶13        Generally, "[e]ither spouse separately may . . . bind the community."  A.R.S. § 25-214(C).  However, "joinder of both spouses is required in . . . [a]ny transaction of guaranty, indemnity or suretyship."  A.R.S. § 25-214(C)(2).  Here, Inga did not sign the Post-Marital Guaranty, and it may not, therefore, be enforced against her or the marital community. *Consol. Roofing*, 140 Ariz. at 458, 682 P.2d at 463.  Although First Fidelity concedes this point, it nonetheless contends it may collect upon the debt incurred under the second loan agreement, from the community, by virtue of the Pre-Marital Guaranty, pursuant to A.R.S. § 25-215(B).  We disagree.

¶14        Pursuant to A.R.S. § 25-215(B), "community property is liable for the pre-marital separate debts or other liabilities of a spouse . . . to the extent of the value of that spouse's contribution to the community property which would have been such spouse's separate property if single."[4] However, the community cannot be bound by a guaranty executed by only one spouse "where the liability from that guarant[y did] not arise until after marriage."  *GAF Corp. v. Diamond Carpet Corp.*, 117 Ariz. 297, 300, 572 P.2d 125, 128 (App. 1977).

¶15        For purposes of A.R.S. § 25-215(B), the question becomes whether Michael's liability to First Fidelity "arose" before or after his marriage to Inga.  First Fidelity argues the liability arose upon execution of the Pre-Marital Guaranty.  However, a guaranty does not, in and of itself, create an indebtedness; it is merely a promise to repay sums incurred by a third party pursuant to a separate transaction or transactions. *See McClellan Mortg. Co. v. Storey*, 146 Ariz. 185, 187-88, 704 P.2d 826, 828-29 (App. 1985) (distinguishing between guaranty and surety as follows: "'[t]he surety is a

---

[4]        We have previously held that the "other liabilities" referenced in A.R.S. § 25-215(B) are limited to pre-marital, separate liabilities. *Schilling v. Embree*, 118 Ariz. 236, 238-39, 575 P.2d 1262, 1264-65 (App. 1977).

party to an original obligation which binds him as well as his principal, whereas a guarantor is not a party to such an undertaking, the contract by which he is bound being collateral to a primary or original obligation'") (quoting *Sec. Ins. Co. v. Johns-Manville Sales Corp.*, 8 Ariz. App. 18, 21, 442 P.2d 555, 558 (1968)); *see also* Black's Law Dictionary (10th ed. 2014) (defining "guaranty" as "[a] promise to answer for the payment of some debt . . . in case of the failure of another who is liable in the first instance").

¶16         We hold that although the promise to repay contained in a guaranty may continue indefinitely according to its terms, the guarantor's liability upon a guaranty does not arise until debt is incurred, implicating the imposition of the guaranty, through a separate transaction. At that point, the guarantor becomes "contractually, if contingently, bound on the guarant[y]." *Crown Life Ins. Co. v. Howard*, 170 Ariz. 130, 134, 822 P.2d 483, 487 (App. 1991) (enforcing pre-marital guaranty of existing debts of partnership against that spouse's contribution to marital community). Often, these events will occur simultaneously. Where they do not, the mere fact that the guaranty predates the marriage does not obligate any portion of the marital community to satisfy debts that arise after the marriage.

¶17         This holding is consistent with the purposes of A.R.S. §§ 25-214(C) and -215(B): "'to protect one spouse against obligations undertaken by the other spouse without the first spouse's knowledge and consent,'" *Rackmaster Sys., Inc. v. Maderia*, 219 Ariz. 60, 63, ¶ 14, 193 P.3d 314, 317 (App. 2008) (quoting *Vance-Koepnick v. Koepnick*, 197 Ariz. 162, 163, ¶ 6, 3 P.3d 1082, 1083 (App. 1999)), and "to prevent avoidance of *existing* obligations by the voluntary act of marriage." *Schilling*, 118 Ariz. at 239, 575 P.2d at 1265 (emphasis added). Here, it is undisputed that Michael's obligation to repay the Borrower's indebtedness under the first loan agreement was extinguished through the "refinance" achieved by the second loan agreement. Effectively, the debt being pursued by First Fidelity and which triggered Michael's renewed liability under the Pre-Marital Guaranty did not arise until more than a year after the creation of the Tolls' marital community. Thus, this is not a case where a known pre-marital obligation is avoided by virtue of a later marriage. Rather, the pre-marital indebtedness was satisfied, and a new, post-marital liability arose, when the Borrower received additional funds under the second loan agreement. Therefore, although Michael remains bound, in his individual capacity, by the terms of the Pre-Marital Guaranty, in the absence of Inga's signature, neither she nor the marital community is responsible for the post-marital liability arising from Michael's continuing guaranty of the second loan agreement.

**CONCLUSION**

**¶18**        For the foregoing reasons, we affirm the judgment against Distinctive Drywall, L.L.C. and Michael individually, and vacate the judgment against Michael's contribution to the marital community.  We also vacate the trial court's award of attorneys' fees and costs to First Fidelity and remand for evaluation of the parties' entitlement to fees, and the amount of any such fees, in light of the issues determined in this appeal.

**¶19**        Both parties request attorneys' fees and costs pursuant to A.R.S. §§ 12-341, -341.01, ARCAP 21, and the terms of the Pre-Marital and Post-Marital Guaranties.  As the prevailing party, the Tolls are awarded their reasonable attorneys' fees and costs on appeal upon compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court

FILED: ama